Robert A. Friedman
Attorney for Plaintiff
ROBERT A. FRIEDMAN and ASSOCIATES
3410 Broadway
Everett, Washington 98201
(425) 252-5551
(425) 259-7111 (fax)

**FILED**

NOV - 9 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

By _____ Deputy

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

TRACY FREEL,                          )
                                      )
    Plaintiff,                  )   Case No. F05-0018-CIV (RRB)
                                      )
v.                                    )
                                      )   Hon. Ralph R. Beistline,
JO ANNE B. BARNHART,                  )   United States District Judge
Commissioner of Social Security,      )
                                      )
    Defendant.                  )

### PLAINTIFF'S OPENING BRIEF

I.    <u>Motion for Relief Under Sentence Four of 42 U.S.C. § 405(g)</u>

    Plaintiff, Tracy Freel, respectfully moves the Court to enter judgment pursuant to the

fourth sentence of 42 U.S.C. § 405(g), reversing the final decision of the Defendant, the

Commissioner of Social Security, without a remand for a rehearing, i.e., for a finding of

disability and an award of benefits, or, alternatively, with a remand for a rehearing, i.e., for

further administrative proceedings.



II.    Procedural History

In January 2002, Freel applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, see 42 U.S.C. §§ 416(i), 423(d), stating that he had been disabled since August 18, 2000. (Tr. at 56.) After his application was denied initially, he requested a de novo ALJ hearing. (Tr. at 27-28, 32.) On November 2, 2004, Freel appeared with counsel and testified at an administrative hearing before ALJ M.J. Adams. (Tr. at 307.) In addition, Paul Prachyl testified as a vocational expert (Tr. at 52, 54-55, 307, 334-38), Shannon Freel testified as Freel's wife (Tr. at 307-09, 321-27), and Jerry Patrell testified as Freel's friend and co-worker (Tr. at 307-09, 327-34). On January 18, 2005, the ALJ decided that Freel was not disabled at step five of the well-known five-step sequential evaluation. (Tr. at 26.) 20 C.F.R. § 404.1520(g) (2005) (step five). Freel requested Appeals Council review and submitted additional evidence.[1] (Tr. at 231-306.) On May 20, 2005, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Freel's request for review. (Tr. at 5.) 20 C.F.R. § 422.210(a) (2005). Freel then initiated this civil action for judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g).

III.    Statement of Facts

A.    Age and Insured Status

Freel was born in 1965. (Tr. at 56.) He was thirty-five years old on August 18, 2000 (his alleged onset date) and thirty-nine years old on January 18, 2005 (the date of the ALJ's decision). (Tr. at 26, 56.)

---

[1] Some of the additional evidence was duplicative. (Tr. at 6.)

Freel's insured status did not expire before the ALJ rendered his decision.  (Tr. at 25-26.)

B.      Education

Freel has a high school education.  (Tr. at 68, 313.)

C.      Work Experience

Freel has worked as a mechanical insulator, hunting guide, and farmer.  (Tr. at 71-74, 103.)

D.      Medical Evidence

Freel discusses in the Argument section below the medical evidence upon which he relies.

E.      Vocational-Expert Testimony

The vocational expert classified Freel's past work: pipe coverer and insulator; hunting guide; and farmer.  (Tr. at 335.)  These jobs were at least medium in exertion.  (Tr. at 335.)  See 20 C.F.R. § 404.1567(c) (2005) (defining "medium" work).  The ALJ asked the vocational expert a hypothetical question assuming that a person

- had no transferable skills,
- was as old as Freel and had his level of education,
- could lift and/or carry 20 pounds occasionally and 10 pounds frequently,
- could stand and/or walk for 2 hours at one time,
- could stand and/or walk for a total of 6 hours in an 8-hour workday,
- could sit for 2 hours at one time and for a total of 6 hours in an 8-hour workday,
- could occasionally climb stairs and balance,
- could not do repetitive bending or stooping,
- could reach overhead,
- could handle, do gross manipulation, and do fine manipulation, and
- had no environmental limitations.

(Tr. at 335-36.)  In other words, the ALJ asked the vocational expert to assume that a person

-3-

could perform a limited range of "light" work. <u>See</u> 20 C.F.R. § 404.1567(b) (2005) (defining

"light" work). The ALJ also asked the vocational expert to provide the <u>Dictionary of</u>

<u>Occupational Titles</u> (<u>DOT</u>) numbers for any job. (Tr. at 336.) According to the vocational

expert, a person could do the following "light" jobs in the specified incidences:

| Job | DOT | Alaska Incidence | U.S. Incidence |
|---|---|---|---|
| parking lot attendant | 915.473-010 | 100 | 98,000 |
| inspector and hand packager | 559.687-074 | 150 | 262,000 |
| office helper | 239.567-010 | 200 | 97,000 |

(Tr. at 337.)

IV.    *Background*: Standard and Method of Judicial Review

Under 42 U.S.C. § 405(g), a court reviews whether substantial evidence supports the

Commissioner's final decision — and its essential subsidiary factual findings — and whether the

Commissioner applied the proper legal criteria in reaching her decision. 42 U.S.C. § 405(g);

<u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998).

"Substantial evidence" (1) may be less than a preponderance of the evidence; (2) must be

more than a scintilla of evidence; and (3) is such relevant evidence as a reasonable mind might

accept to support a conclusion. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938);

<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Consolo v. Federal Maritime Comm'n</u>, 383

U.S. 607, 618-19 (1966); <u>Reddick</u>, 157 F.3d at 720.

To determine whether substantial evidence supports the Commissioner's decision, a court reviews the whole record, Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992), including evidence that detracts from the Commissioner's findings and decision, Universal Camera Corp. v. NLRB, 340 U.S. 456, 487-88 (1951). A court must affirm the Commissioner's factual findings even if the court believes that substantial evidence would support alternative findings. Arkansas, 503 U.S. at 113. But a court should adopt a finding suggested by the claimant if the record requires those findings. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); see also 42 U.S.C. § 405(g) (sentence four) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.").

When it reviews an ALJ's decision, a court evaluates the reasons the ALJ gave for his or her decision, not post hoc rationalizations for the decision. See Connett v. Barnhart, 340 F.3d 871, 974 (9th Cir. 2003) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

V.    *Background*: Sequential Evaluation and ALJ's Step-Five Decision

As a primary task on judicial review of the Commissioner's denial of benefits, the plaintiff must identify the ALJ's findings in the context of the five-step sequential evaluation. 20 C.F.R. § 404.1520 (2005) (sequential evaluation). In January 2005, the ALJ rendered a step-five decision. (Tr. at 26.) 20 C.F.R. § 404.1520(g) (2005) (step five).

A.    To Receive DIB, a Claimant Must Be Insured.

In order to be entitled to DIB, a claimant must be disabled as of the date his or her insured status expires. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Freel's insured status did

-5-

not expire before the ALJ's decision date.  (Tr. at 25-26.)  Therefore, his insured status is not at issue.

      B.    <u>There Are Three Types of Step-Five Decisions.</u>

      At step five, the Commissioner has the burden "to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999); 20 C.F.R. § 404.1520(g) (2005) (step five).  There are three ways the Commissioner may carry this burden and each involves, to some degree, the use of the Medical-Vocational Guidelines (Grid).  20 C.F.R. Pt. 404, Subpt. P, App. 2 (2005) (Grid).  First, if a claimant's residual functional capacity and vocational characteristics correspond precisely to a Grid rule, the Grid rule is used to "direct" a finding of "disabled" or "not disabled."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00 (2005).  The second and third ways both use the Grid as a "framework" for decisionmaking.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) (2005).  The second way uses the Grid as a "framework" without vocational-expert testimony, and the third way uses the Grid as a "framework" with vocational-expert testimony.  When a claimant's ability to perform a full range of work at a specific exertional level is "significantly" diminished, the fact-finder must use the Grid as a framework <u>with</u> vocational-expert testimony to make a correct decision.  <u>Tackett</u>, 180 F.3d at 1101-04; <u>Reddick</u>, 157 F.3d at 728.

—

C.     The ALJ Rendered a Step-Five Decision.

At step one, the ALJ found that Freel had not engaged in substantial gainful activity since

his alleged onset date. (Tr. at 25.) 20 C.F.R. § 404.1520(b) (2005) (step one). At step two, the

ALJ determined that Freel had a "severe" impairment. (Tr. at 25.) 20 C.F.R. § 404.1520(c)

(2005) (step two). At step three, the ALJ concluded that Freel did not have an impairment or

combination of impairments that met or equaled the requirements of a Listed impairment. (Tr. at

25.) 20 C.F.R. § 404.1520(d) (2005) (step three). After step three but before step four, the ALJ

determined Freel's residual functional capacity, i.e., the most that he could do despite the total

limiting effects of all his impairments. (Tr. at 25.) See 20 C.F.R. § 404.1545 (2005) (defining

"residual functional capacity"). According to the ALJ, Freel had

> the following residual functional capacity: to lift no more than 20 pounds at a
> time, with frequent lifting or carrying of objects weighing up to 10 pounds; to sit,
> stand, and/or walk for two hours at a time but no more than six hours out of an
> eight hour workday. He can reach overhead and do repetitive handling (gross
> manipulation) and fingering (fine manipulation). He has no visual, hearing,
> speaking, or environmental limitations.

(Tr. at 25.) In other words, the ALJ found that Freel could perform a limited range of "light"

work. See 20 C.F.R. § 404.1567(b) (2005) (defining "light" work).[2] At step four, the ALJ found

_____

[2] Section 404.1567(b) provides,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds. Even though the weight lifted
> may be very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls. To be considered capable of performing a full or
> wide range of light work, you must have the ability to do substantially all of these
> activities. If someone can do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting factors such as loss of fine

that Freel could not return to his past relevant work. (Tr. at 26.) 20 C.F.R. § 404.1520(f) (2005)

(step four). Therefore, the sequential evaluation proceeded to step five. (Tr. at 25.) 20 C.F.R. §

404.1520(g) (2005) (step five). At step five, the ALJ determined that Freel was a "younger"

person; the transferability of skills was not an issue; and Freel had a high school education. (Tr.

at 26.) See 20 C.F.R. § 404.1563 (2005) (classification of age); 20 C.F.R. § 404.1564 (2005)

(classification of education); 20 C.F.R. § 404.1568 (2005) (classification of skill level of work);

20 C.F.R. § 404.1565 (2005) (evaluation of work experience). Using the Grid as a "framework"

with vocational-expert testimony, the ALJ decided that Freel was not disabled. (Tr. at 25-26.)

20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.21 (2005). Freel could work as a parking lot

attendant; inspector and hand picker; and office helper. (Tr. at 25-26.) There were about

457,000 such jobs in the national economy. (Tr. at 25-26.)

VI.    Argument

    A.    *§ 404.1530*: The ALJ Misapplied the Failure-to-Follow-Treatment Regulation.

    The ALJ misapplied 20 C.F.R. § 404.1530 (2005), the failure-to-follow-prescribed-

treatment regulation. (Tr. at 22 (citing 20 C.F.R. § 404.1530(b)).) See also Social Security

---

dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (2005).

Ruling (SSR)[3] 82-59[4] (explaining § 404.1530).

        1.      <u>§ 404.1530 Has Several Requirements.</u>

Section 404.1530 has several requirements. 20 C.F.R. § 404.1530 (2005). Unless each requirement is satisfied, § 404.1530 cannot be used to find a claimant not disabled. The regulation states that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. § 404.1530(a) (2005); <u>see also</u> SSR 82-59 (same). Because the regulation refers to <u>restoring</u> a claimant's ability to work, as a necessary precondition to the application of the regulation, the claimant must be disabled before the regulation may be used to find a claimant not disabled. <u>See</u> SSR 82-59.[5] Freel refers to this as the "disability requirement." <u>See also</u> <u>Gamble v. Chater</u>, 68 F.3d 319, 321 (9th Cir. 1995) (acknowledging the disability requirement). Even if a claimant does not follow treatment prescribed by his or her physician and even if the disability requirement is met, § 404.1530

---

[3] Social Security Rulings are binding on all Agency adjudicators, including ALJs. 20 C.F.R. § 402.35(b)(1) (2005) ("We publish [SSRs] in the Federal Register under the authority of the Commissioner . . . . They are binding on all components of the [Agency]."). Unless invalid, a court generally defers to the Agency's interpretative rulings such as an SSR. <u>E.g.</u>, <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005).

[4] <u>Available at</u> http://www.ssa.gov/OP_Home/rulings/di/02/SSR82-59-di-02.html.

[5] Social Security Ruling 82-59 provides in part:

SSA may make a determination that an individual has failed to follow prescribed treatment only where all of the following conditions exist:
    1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity . . . .

SSR 82-59.

cannot be used to find the claimant not disabled if the claimant has a "good reason" for not

following prescribed treatment. 20 C.F.R. § 404.1530(c) (2005); SSR 82-59.

> 2.     The Disability Requirement of § 404.1530 Was Not Met.

The ALJ erroneously applied § 404.1530 because its disability requirement was not met.

The ALJ never found <u>before taking into account any failure to follow any prescribed treatment</u>

that Freel would be disabled. (Tr. at 15-26.) Because the ALJ never found that Freel would be

disabled before taking into account any failure to follow any prescribed treatment, Freel's ability

to work could not be <u>restored</u> by following such treatment. <u>See</u> 20 C.F.R. § 404.1530(a) (2005)

(including a disability requirement); SSR 82-59 (same); <u>Byrnes v. Shalala</u>, 60 F.3d 639, 641 (9th

Cir. 1995) (finding disability requirement not met).[6]  The ALJ thereby misapplied § 404.1530.

> B.     *Activities*: The ALJ Erroneously Evaluated Freel's Activities.

An ALJ must evaluate reasonably a claimant's activities of daily living when determining

the claimant's credibility. 20 C.F.R. § 404.1529(c)(3)(i) (2005); <u>Reddick</u>, 157 F.3d at 722.  The

ALJ's evaluation of Freel's activities of daily living is a central part of the ALJ's decisional

rationale. (Tr. at 22-23.) The ALJ found Freel not credible and largely rejected opinions from

---

[6]  In <u>Byrne</u>, the Ninth Circuit found that § 404.1530 did not apply for multiple reasons, including because the disability requirement was not met:

> Because the ALJ made no finding that "[Byrnes] was not complying with [his] prescribed treatment program[,] that [he] lacked good cause for failing so to comply," or that if he stopped smoking he could return to work, we "decline to review the record to ascertain whether substantial evidence might support these findings not made."

<u>Byrne,</u> 60 F.3d at 641 (internal citations omitted).

treating physicians Dr. Roderer and Dr. Peterson based on Freel's activities.  (Tr. at 22-23.)

Substantial evidence does not support the ALJ's decision because he erroneously evaluated

Freel's activities.  (Tr. at 22-23.)

    1.    The ALJ Did Not Account for the Need for Sustained Work.

    The ALJ reached step five where at issue is a claimant's ability to perform "sustained"

work in the national economy.  20 C.F.R. 404.1520(g) (2005) (step five); SSR 96-8p[7] (discussing

"sustained" work at steps four and five).  A residual functional capacity for "sustained" work

refers to work eight hours per day, five days per week, or an equivalent work schedule.  SSR 96-

8p.  Nowhere did Freel's limited activities approach the level of full-time work in the light

exertional range as the ALJ found that Freel could do.  (Tr. at 25.)  Instead, Freel's limited

activities were intermixed with significant rest and periods of rest.  (E.g., Tr. at 84, 323.)  As his

wife described, "He don't do a whole lot of nothing."  (Tr. at 322.)  Freel also sometimes needed

assistance with basic tasks such as putting on shoes and socks and washing his lower extremities

from the knee down.  (Tr. at 84, 321.)  This case is thus similar to the Vertigan v. Halter, 260

F.3d 1044 (9th Cir. 2001), in which the Ninth Circuit rejected an ALJ's evaluation of the

claimant's activities.  Id. at 1050 ("This court has repeatedly asserted that the mere fact that a

plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

walking for exercise, does not in any way detract from her credibility as to her overall

disability."); cf. also Reddick, 157 F.3d at 722 ("We conclude that the ALJ's finding that

Claimant's activities indicate an ability to work is unsupported by the record.  The activities

---

    [7]  Available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html.

-11-

Claimant described to her doctors, on disability forms, and at her hearing, were fully consistent with [chronic fatigue syndrome]. Her activities were sporadic and punctuated with rest.").

### 2. The ALJ Erroneously Evaluated Walking.

The ALJ erroneously evaluated Freel's activities involving walking. (Tr. at 22-23.)

#### a. Walking Requirements of Light Work

The ALJ found that Freel could do all the standing and/or walking that "light" work requires. (Tr. at 25.) "Light" work requires the ability to stand and/or walk for "prolonged" periods. SSR 83-12.[8] The ALJ correctly stated that "light" work requires standing and/or walking for prolonged periods of two hours at a time. (Tr. at 25.) Light work also requires the abilities to stand and/or walk for a total of six hours in an eight-hour workday. SSR 83-10.[9] The ALJ correctly stated that "light" work requires standing and/or walking for a total of six hours in an eight-hour workday. (Tr. at 25.)

#### b. Freel's Short Walks

The ALJ found Freel not credible because he "reported that he took short walks." (Tr. at 22.) Taking short walks does not prove that a claimant can do the prolonged standing and/or walking that light work requires, see SSR 83-10; SSR 83-12, or the total six hours of standing and/or walking that light work requires, see id.

For his analysis of walking, the ALJ referred to Freel's statement on page 1 of Exhibit 4E. (Tr. at 22.) There, Freel merely reported that he went for "short walks." (Tr. at 84; see also id. at

---

[8]  Available at http://www.ssa.gov/OP_Home/rulings/di/02/SSR83-12-di-02.html.

[9]  Available at http://www.ssa.gov/OP_Home/rulings/di/02/SSR83-10-di-02.html.

86, 92 (same); id. at 149, 154 (referring to walking "a little")).) The ALJ also referred to

"testimony" about Freel's walking. (Tr. at 22.) Freel did not admit at the hearing that he could

do the prolonged walking at one time or total six hours of walking per day that light work

requires. (Tr. at 317-18.) At the hearing, Freel's wife reported, "I can't get him to go for walks

like I did before." (Tr. at 326-27.) Also at the hearing, Mr. Patrell, Freel's friend, reported that

Freel walked at a slow pace and not for a long period of time. (Tr. at 330.)

### 3    The ALJ Erroneously Evaluated Sitting.

The ALJ erroneously evaluated Freel's activities involving sitting. (Tr. at 22-23.)

#### a.    Sitting Requirements of Light Work

The ability to do "light" work implies the ability to do "sedentary" work. 20 C.F.R. §

404.1567(b) (2005). Thus, even if "light" work requires mostly standing and/or walking, it also

requires the ability to sit for "prolonged" periods because "sedentary" work requires the ability to

sit for "prolonged" periods. See SSR 83-12; see also SSR 96-9p[10] (defining a prolonged period

of sitting as a two-hour period).

#### b.    Freel's Limited Sitting

According to the ALJ, Freel alleged that he "could not sit for any length of time." (Tr. at

22 (emphasis added).) This mischaracterizes Freel's statements about sitting. In February 2002,

Freel stated that he could sit for thirty minutes at one time. (Tr. at 92.) Likewise, at the

November 2004, hearing, Freel stated he could sit at most for thirty minutes, but that he started

"feeling it" after four or five minutes. (Tr. at 318.) The ALJ's mischaracterization of Freel's

---

[10] Available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-09-di-01.html.

-13-

statements about sitting is neither evidence nor substantial evidence.

The ALJ also disbelieved Freel's statements about a limited ability to sit on the basis that Freel reported that he used a computer, an activity "presumably" involving "prolonged sitting." (Tr. at 23.)  An ALJ's assumption or speculation is not evidence.  See White ex rel. Smith v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence.").  If the ALJ wanted to know precisely for how long Freel sat at one time at the computer, he should have asked Freel instead of presuming that he sat for prolonged periods.  See 20 C.F.R. § 404.944 (2005) ("At the hearing, the [ALJ] looks fully into the issues, questions you and the other witnesses").

There was evidence that Freel used a computer for several hours.  (Tr. at 323; but see id. at 85 ("I like going on the internet for small periods of time.").)  However, just because Freel used a computer for several hours does not mean that he did not stand up at regular intervals to relieve the pressure on his back.  The ALJ's assumption that Freel did not get up at intervals of less than two hours (Tr. at 23) is neither evidence nor substantial evidence.  As a related matter, Freel's wife described that Freel was "back laying on the bed" after he engaged in activities such as using the computer and watching television for a "couple of hours." (Tr. at 323.)  Thus, even if Freel were able to sit for two hours at one time, after doing so he needed to rest.

### 4    The ALJ Erroneously Evaluated Freel's Fishing.

The ALJ emphasized that Freel went fishing.  (Tr. at 22 ("the claimant drove the family boat to go fishing"); id. at 23 ("he was capable of driving a boat"); id. ("driving a boat and

-14-

fishing"); id. ("twisting and bending, in the case of fishing").)  The ALJ's reliance on Freel's

infrequent fishing is misplaced.  Freel was not able to fish at all times.  (Tr. at 87 ("fish when &

if I can"); id. at 91 (no longer able to fish for Halibut); id. at 322-23 (Freel's wife's testimony

that she did all the preparation for fishing and that "all he really does is drive the boat"); id. at

326 (Mr. Patrell's testimony that Freel watched others fish).)  The "substantiality of evidence

must take into account whatever in the record fairly detracts from its weight." Universal Camera

Corp. v. NLRB, 340 U.S. 456, 488 (1951).  This means that a court should not ratify an ALJ's

decision "simply by isolating a specific quantum of supporting evidence."  Day v. Weinberger,

522 F.2d 1154, 1156 (9th Cir. 1975) (citing Universal Camera Corp., 340 U.S. at 487-88).

Therefore, an ALJ "must consider all of the evidence and discuss significant evidence contrary to

[his or] her ruling."  Lauer v. Apfel, 169 F.3d 489, 494 (7th Cir. 1999).  Because the ALJ did not

account for evidence that Freel's fishing was limited, substantial evidence does not support the

ALJ's reliance on Freel's fishing to find him not credible and ultimately not disabled.

 For all these reasons, the ALJ erroneously evaluated Freel's activities.

 C. *Dr. Peterson and Dr. Roderer*: The ALJ Erroneously
   Rejected Treating-Physician Opinions From October 2004.

 Substantial evidence does not support the ALJ's residual functional capacity finding

because the ALJ erroneously rejected the October 2004, opinions of treating orthopedist Dr.

Peterson and treating pain specialist Dr. Roderer.  (Tr. at 23 (ALJ's rationale); id. at 229 (Dr.

Peterson's opinions); id. at 230 (Dr. Roderer's opinions).)

1.    The Legal Analysis of Treating-Physician Opinions is Well-Known.

Under Ninth Circuit law, an ALJ must present "clear and convincing" reasons for rejecting the uncontroverted opinion of a claimant's treating physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (internal quotation marks and citation omitted). When the treating physician's opinion is controverted, an ALJ must give "specific and legitimate" reasons for rejecting the opinion. Id. (internal quotation marks and citation omitted). Similarly, by regulation, an ALJ must "always give good reasons" for the weight accorded to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2) (2005).

There is a consequence to an ALJ's faulty rejection of a treating physician's opinion. That opinion is accepted as true. Lester, 81 F.3d at 834 ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law.") (internal quotation marks and citation omitted). When a claimant is clearly disabled in light of a treating physician's opinion that is not properly rejected, a court should hold that the claimant is disabled and entitled to benefits. E.g., Lester, 81 F.3d at 834.

2.    Dr. Peterson and Dr. Roderer Found That Freel
        Was More Limited Than the ALJ Recognized.

Although it may be obvious, Freel explains how Dr. Peterson's and Dr. Roderer's October 2004, opinions were more restrictive than the ALJ's residual functional capacity finding. According to the ALJ, Freel could do a limited range of light work on a full-time basis. (Tr. at 25.) See 20 C.F.R. § 404.1567(b) (2005) (defining "light" work); SSR 96-8p (requiring the ability to work full-time at step five).

-16-

In October 2004, Dr. Peterson stated that Freel was "limited in his ability to sit for prolonged periods of time" and could not "do repetitive twisting, bending, carrying," etc. (Tr. at 229.) Dr. Peterson believed that a thorough physical capacities evaluation would be useful, but he nonetheless avowed that Freel would "at best . . . be able to pursue only fairly light or sedentary activities part-time and possibly longer depending upon his response to treatment." (Tr. at 229.) A claimant who can work only part-time at step five is disabled. SSR 96-8p.

Also in October 2004, Dr. Roderer summarized,

> I believe the patient's pain symptoms stem from painful disk degeneration and internal disk disruption in the lower lumbar spine. He also has significant muscular spasm and bracing causing pain radiation into the upper lumbar spine. I do not believe that Mr. Freel is capable of returning to work at his previous job prior to the work-related injury and may not be able to sustain any work level due to his severe chronic pain symptoms.
> Please consider Mr. Freel for social security disability as his chronic low back and midback pain are quite disabling. . . . .

(Tr. at 230.)

3.    The ALJ Erroneously Rejected Dr. Peterson's
      And Dr. Roderer's Opinions Inconsistent With
      His Residual Functional Capacity Finding.

The ALJ did not give legally sufficient reason for rejecting Dr. Peterson's and Dr. Roderer's October 2004, opinions. (Tr. at 23.) Lester, 81 F.3d at 830..

a.    Dr. Peterson's October 2004, Opinions

The ALJ rejected Dr. Peterson's October 2004, part-time work opinion on the ground that Dr. Peterson based his opinion on Freel's "own statements" but Freel's statements about his activities showed that Freel could work. (Tr. at 23.) According to the ALJ, Freel's activities showed that he could perform the range of work the ALJ specified. (Tr. at 23.) But as discussed

-17-

above, Freel's activities nowhere approached the level of full-time sustained work and otherwise did not prove that Freel could do the prolonged standing, walking, and sitting that the ALJ found that Freel could do.

Additionally, the ALJ did not give adequate weight to the fact that Dr. Peterson was an orthopedic specialist. See 20 C.F.R. § 404.1527(d)(5) (2005) (generally according more weight to the opinion of a specialist); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (same). Further, the ALJ did not account adequately for the fact that Dr. Peterson was intimately familiar with the dramatic objective evidence, including of annular tears at L4-5 and L5-S1. (Tr. at 229; see also id. at 178, 180-83, 186-89.)

### b.    Dr. Roderer's October 2004, Opinions

Just as the ALJ erroneously rejected treating orthopedist Dr. Peterson's October 2004, opinions based on Freel's activities of daily living, the ALJ erroneously rejected treating pain specialist Dr. Roderer's October 2004, opinions based on those activities. (Tr. at 23.)

The ALJ also disbelieved Dr. Roderer on the ground that his October 2004, opinions contradicted his earlier opinions. (Tr. at 23.) The ALJ stated that in December 2001, Dr. Roderer anticipated that Freel would return to work and that in "no subsequent visits in the record did the doctor opine that the claimant would be unable to return to work." (Tr. at 23.) This is unreasonable. A busy physician offers an opinion whether his or her patient can return to work when the physician is asked. When Dr. Roderer was asked in October 2004, whether Freel could work, he corroborated Freel's statements that Freel could not. (Tr. at 230.) Further, the ALJ did not point to any opinion from Dr. Roderer releasing Freel to work. (Tr. at 23.)

-18-

As a related matter, in 2004 Dr. Roderer was still considering new treatments to alleviate

Freel's pain. For example, Dr. Roderer wrote to the state workers' compensation board in May

2004, asking for authorization for intradiskal electrothermal therapy before disk replacement.

(Tr. at 211-12.)

For all these reasons, the Court should hold that the ALJ erroneously rejected the October

2004, opinions of treating orthopedist Dr. Peterson and treating pain specialist Dr. Roderer.

Lester, 81 F.3d at 830, 834. The Court should conclude either that Freel was clearly disabled

given those opinions, see Lester, 81 F.3d at 834, or hold that those opinions should be evaluated

properly on remand.

D.    *Physical Therapy*: The ALJ Was Mistaken About Physical Therapy.

The ALJ found that Freel was not credible because there was no evidence that he attended

physical therapy after a certain date. (Tr. at 22 (referring to id. at 166 ("Was last seen at

Healthsouth Physical Therapy facility in Fairbanks on November 24, 2000")). Based on Appeals

Council evidence, the ALJ was mistaken.

1.    This Court May Consider Appeals Council Evidence.

In the Ninth Circuit, a court may review under sentence four of 42 U.S.C. § 405(g)

evidence not only submitted to the ALJ, but also submitted to the Appeals Council. See Ramirez

v. Shalala, 8 F.3d 1449 (9th Cir. 1993). In Ramirez, 8 F.3d 1449, the Ninth Circuit reviewed

together evidence submitted to the ALJ and to the Appeals Council and held that claimant

Ramirez was disabled. Id. at 1451-52; see also id. at 1454 ("We now examine the full record,

including the supplemental material submitted to the Appeal Council, to determine what it

reveals with respect to Ramirez's eligibility for benefits"). In <u>Harman v. Apfel</u>, 211 F.3d 1172

(9th Cir. 2000), the Ninth Circuit held, "We properly may consider the additional materials

because the Appeals Council addressed them in the context of denying Appellant's request for

review." <u>Id.</u> at 1180 (citing <u>Ramirez</u>); <u>see also</u> <u>Gomez v. Chater</u>, 74 F.3d 967, 971 (9th Cir. 1996)

(citing <u>Ramirez</u>).[11]

> 2.  Appeals Council Evidence Shows
>     Physical Therapy After November 2000.

Evidence submitted to the Appeals Council shows that Freel underwent physical therapy

after November 2000. (Tr. at  247, 275-76, 279-86, 298 (physical therapy in 2001); <u>id.</u> at 248-74,

276, 278 (physical therapy in 2002).)

E.    *Stooping: Freel Could Not Stoop Repetitively or Even Occasionally.*

"Stooping is a type of bending in which a person bends his or her body downward and

forward by bending the spine at the waist." SSR 83-10. In his residual functional capacity

finding, the ALJ did not refer specifically to Freel's ability to stoop. (Tr. at 25.) If the ALJ

found that Freel could stoop without limitation, substantial evidence would not support that

finding. In any case, the ALJ relied on his hypothetical question to the vocational expert

assuming that the person should avoid "repetitive bending or stooping." (Tr. at 336.) Substantial

evidence would not support that finding assuming that it were the ALJ's residual functional

capacity finding.

---

[11] <u>Mayes v. Massanari</u>, 276 F.3d 453, 461 n.3 (9th Cir. 2001), does not justify ignoring
the rule of <u>Ramirez</u>, <u>Harman</u>, and <u>Gomez</u> and treating Appeals Council evidence under sentence
six of 42 U.S.C. § 405(g).

In <u>Golembiewski v. Barnhart</u>, 322 F.3d 912 (7th Cir. 2003), the Seventh Circuit held that substantial evidence did not support an ALJ's finding that a claimant could stoop occasionally. <u>Id.</u> at 917. The ALJ did not address evidence that the claimant's "motion in his lower back was reduced to 40 degrees of flexion, 15 degrees of extension, and 10 degrees of tilting." <u>Id.</u> In the case at bar, the ALJ did not consider adequately evidence that Freel could flex forward only 30-60°/90°. (E.g., Tr. at 168, 175, 212, 217, 220, 223 (30°/90°); <u>id.</u> at 69-71, 213 (50-60°/90°).)

F.    *Strong Pain Medication*: The ALJ Did Not Give Adequate Weight to the Fact That Freel Took Strong Pain Medication Such as Methadone.

When assessing a claimant's credibility, an ALJ must consider and evaluate a claimant's use of medication. 20 C.F.R. § 404.1529(c)(3)(iv) (2005). The ALJ did not give adequate weight to the fact that Freel took strong narcotic pain medication such as Methadone. (Tr. at 107-09, 210, 213, 215-16, 316 (Methadone prescribed).)

VII.    Conclusion

The Court should enter judgment under sentence four, reversing the Commissioner's final decision without a remand for a rehearing, i.e., for a finding of disability and an award of benefits. 42 U.S.C. § 405(g) (sentence four); see also <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 99-101 (1991) (explaining sentence four). Alternatively, the Court should reverse the Commissioner's final decision with a remand for a rehearing, i.e., for further administrative proceedings. There are multiple harmful defects in the ALJ's decision.

Respectfully submitted,

*Robert A. Friedman*

Robert A. Friedman
Attorney for Plaintiff

Robert A. Friedman
Attorney for Plaintiff
ROBERT A. FRIEDMAN and ASSOCIATES
3410 Broadway
Everett, Washington 98201
(425) 252-5551
(425) 259-7111 (fax)

I certify that on or before November 9, 2005, I mailed Plaintiff's Opening Brief by First Class Mail to counsel for the Defendant at the following address:

Richard L. Pomeroy
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513

*Eric Schrafer for*

Robert A. Friedman
Attorney for Plaintiff

-22-