FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC -8 PM 3: 53

TG

1

TIMOTHY R. BURGESS

2  United States Attorney
RICHARD POMEROY

3  Assistant United States Attorney
Federal Bldg & U.S. Courthouse

4  222 W 7th Ave, #9, Rm C-253
Anchorage, AK 99513-7676

5  Telephone: (907) 271-5071
Fax: (907) 271-2344

6  Richard.Pomeroy@usdoj.gov


7  STEPHANIE R. MARTZ
Special Assistant United States Attorney

8  701 Fifth Avenue, Suite 2900 M/S 901
Seattle WA 98104-7075

9  Telephone (206) 615-2272
FAX (206) 615-2531

10  stephanie.martz@ssa.gov


11  Of Attorneys for Defendant

12          IN THE UNITED STATES DISTRICT COURT

13          FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| 14  TRACY FREEL, | CASE NO. F05-0018 CV (RRB) |
| 15          Plaintiff | |
| 16    vs. | DEFENDANT'S BRIEF |
| 17  JO ANNE B. BARNHART,<br>Commissioner of Social Security | |
| 18          Defendant | |

19                  STANDARD OF REVIEW

20

21     Plaintiff, Tracy Freel, brings this action pursuant to 42 U.S.C. § 405(g). A court must

22  affirm a decision denying benefits if it is supported by substantial evidence and based upon

23  correct legal standards. Batson v. Commissioner of SSA, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is more than a scintilla, but may be less than a preponderance, and is such

ORIGINAL

1   relevant evidence that, considering the entire record, a reasonable person might accept as

2   adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Burch v.

3   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Under this standard, the Commissioner's findings

4   must be upheld if supported by inferences reasonably drawn from the record. Batson, 359 F.3d

5   at 1193. This Court must uphold the Commissioner's denial of benefits if the evidence is

6   susceptible to more than one rational interpretation, one of which supports the decision of the

7   administrative law judge (ALJ). See Burch, 400 F.3d at 679; Thomas v. Barnhart, 278 F.3d 947,

8   954 (9th Cir. 2002).

9        Further, this Court should review the record as a whole in determining whether the ALJ's

10  decision is supported by substantial evidence. See Arkansas v. Oklahoma, 503 U.S. 91, 113

11  (1992). Therefore, in arguing that the ALJ's decision should be affirmed, the Commissioner

12  may make the Court aware of evidence that supports the ALJ's findings, even if that evidence

13  was not explicitly linked to his findings. Although the Ninth Circuit Court of Appeals has held

14  that the Commissioner may not seek affirmance of a final decision based on findings not

15  articulated in the ALJ's decision, see, e.g., Pinto v. Massanari, 249 F.3d 840, 847-848 (9th Cir.

16  2001); Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995); Ceguerra v. Sec. of Health and

17  Human Servs., 933 F.2d 735, 738 (9th Cir. 1991), these cases do not create a rule designed to

18  exclude evidence that supports the ALJ's decision.

19       In SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), the Court held that on appeal of an

20  agency's final decision, the reviewing court may not affirm an agency's final decision based on

21  findings that were never made by the agency in the underling administrative action. See

22  Chenery, 332 U.S. at 196 (holding that if the grounds advanced by the agency are improper, "the

23  court is powerless to affirm the administrative action by substituting what it considers to be a

1    more adequate or proper basis"). The Ceguerra court applied the Chenery doctrine in the context

2    of a Social Security Appeal and held that "when the decision of an ALJ rests on a negative

3    credibility evaluation, the ALJ must make findings on the record and must support those findings

4    by pointing to substantial evidence on the record." Ceguerra, 933 F.3d at 738. Because the ALJ

5    in that case did not make a credibility finding regarding Ceguerra's testimony, the court refused

6    to determine whether substantial evidence would support a negative credibility finding had the

7    ALJ made such a finding. See id. In this case, the ALJ made a proper credibility finding and

8    properly evaluated the medical evidence. The Chenery doctrine is often mistaken for an

9    evidentiary exclusionary rule. Under the Chenery doctrine, however, agency counsel is not

10    precluded from citing substantial evidence in the record that supports the ALJ's findings simply

11    because the ALJ did not explicitly link such evidence to his findings. Rather, as long as the ALJ

12    made the appropriate findings, a reviewing court is required to consider all the evidence of

13    record to determine whether the record contains substantial evidence to support the ALJ's

14    findings. See, e.g., Lewis v. Apfel, 236 F.3d 503, 513-514 (9th Cir. 2001) (as long as evidence

15    in the record reasonably supports the ALJ's findings, it does not matter that the ALJ did not

16    explicitly link his findings to the evidence); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)

17    (in conducting its review, the court must consider the record as a whole, weighing both the

18    evidence that supports and the evidence that detracts from the agency's conclusion). Rather than

19    direct courts to ignore evidence that may support findings that were properly made in the agency

20    final decision, the Chenery doctrine sensibly provides that a reviewing court may not make new

21    findings in an effort to affirm the agency's actions and then search the record for evidence to

22    support those post hoc findings.

23

1

## ISSUE

2

The overarching issue is whether the Commissioner supported her final decision

3

(Tr. 20-34) with substantial evidence and applied correct legal standards.  See Rollins v.

4

Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

5

## STATEMENT OF THE CASE

6

The Commissioner stipulates to Plaintiff's description of the procedural history of this

7

case.

8

## STATEMENT OF FACTS

9

The Commissioner adopts the administrative law judge's (ALJ) summary of the of the

10

facts and discussion of the evidence (Tr. 16-21).  The Commissioner will discuss the relevant

11

evidence in connection with the arguments set forth below.

12

## BURDENS AND SEQUENTIAL EVALUATION PROCESS

13

The burden is on the claimant to prove that he is disabled within the meaning of the

14

Social Security Act.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Disability is the

15

"inability to engage in any substantial gainful activity by reason of any medically determinable

16

physical or mental impairment which can be expected to result in death or which has lasted or

17

can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C.

18

§ 423(d)(1)(A).  A claimant is disabled only if his impairments are of such severity that he is not

19

only unable to do his previous work but cannot, considering his age, education, and work

20

experience, engage in any other substantial gainful activity existing in the national economy.

21

See 42 U.S.C. § 423(d)(2)(A); see also Tackett, 180 F.3d at 1098.

22

The ALJ applied the five-step sequential evaluation process for determining whether a

23

claimant is disabled.  See 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps

one through four. See Tackett, 180 F.3d at 1098-99. At step five, the burden of production (but not persuasion) shifts to the Commissioner to identify jobs existing in significant numbers in the national economy that the claimant can perform given his residual functional capacity (RFC), age, education, and work experience. See id; see also 20 C.F.R. § 404.1560(c)(2). The Commissioner can meet this burden "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines [the Guidelines] at 20 C.F.R. pt. 404, subpt. P, app. 2." Id.

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (Tr. 19, Finding 2). See 20 C.F.R. § 404.1520(b). This finding is not in dispute.

At step two, the ALJ found that Plaintiff had degenerative disc disease, an impairment considered "severe" under the regulations (Tr. 21, 25, Finding 3). See 20 C.F.R.§ 404.1520(c). This finding is not in dispute.

At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment (Tr. 19, Finding 4). See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). This finding is not in dispute.

The ALJ determined that Plaintiff had the RFC, see 20 C.F.R. §§ 404.1520(e), 404.1545, to perform a reduced range of light exertional activities (Tr. 25, Finding 6). See 20 C.F.R. § 404.1567 (defining exertional levels of work); see also Social Security Ruling (SSR) 83-10, available at 1983 WL 31251 (same). This determination is in dispute.

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (Tr. 19, Findings 7). See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f). This finding is not in dispute.

1

2          Continuing to the fifth step of the sequential evaluation process, the ALJ propounded a

3   hypothetical question to the vocational expert incorporating Plaintiff's RFC, age, educational

4   background, and past work experience asking whether there were any other jobs Plaintiff could

5   perform that existed in significant numbers in the national economy (Tr. 334-38).  The

6   vocational expert provided three examples that included:  parking lot attendant, light unskilled

7   work, 98,000 jobs in the national economy; inspector and hand picker, light unskilled work,

8   262,000 jobs in the national economy; and office helper, light unskilled work, 97,000 jobs in the

9   national economy (Tr. 26, finding 12, and Tr. 335-37).  Accordingly, the ALJ found Plaintiff was

10  not entitled to a period of disability or disability insurance benefits (Tr. 26, Finding 13).  See

11  20 C.F.R. § 404.1520(e).  This finding is in dispute.

12         Plaintiff argues that the ALJ misapplied the 20 C.F.R. § 404.1530 and SSR 82-59

13  available at http://www.ssa.gov/OP_Home/rulings/di/02/SSR82-59-di-02.html.  (Plaintiff's

14  Opening Brief (Pl.'s Op. Br.) at 8-10).  He also argues that the ALJ did not properly assess his

15  credibility and RFC; improperly rejected the opinions of Grant Roderer, M.D. and Davis

16  Peterson, M.D.; did not give adequate weight to the side effects of his pain medications; and that

17  evidence submitted to the Appeals Council can be considered by this Court.  (Pl.'s Op. Br.

18  at 10-21).

19         The Commissioner submits that the ALJ's decision is supported by more than a scintilla

20  of evidence and is free of legal error and should be affirmed.  See Richardson, 402 U.S. at 401.

                                    ARGUMENT

21  I.      The ALJ Did Not Find Plaintiff Not Disabled Pursuant to 20 C.F.R. § 404.1530.

22         Plaintiff's argument concerning this matter is misplaced.  Nowhere in the ALJ decision

23  does he making a finding that Plaintiff is not disabled due to his failure to follow prescribed

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

treatment (Tr. 15-26). In fact, the ALJ, after finding Plaintiff to have not engaged in substantial

gainful activity, continued with the sequential evaluation process to arrive at his ultimate step

five finding that Plaintiff was not disabled.[1] In his credibility assessment the ALJ does note that

failure to follow prescribed treatment without good reason is one basis for finding Plaintiff not

disabled (Tr. 22). He did not, however, find Plaintiff not disabled as a result of failing to follow

prescribed treatment. It is reasonable to infer from the content of the ALJ's decision that the fact

of Plaintiff's lack of interest in following his providers' recommendations was evidence that

would allow the ALJ to draw an adverse inference as to Plaintiff's credibility (Tr. 22). See

Burch, 400 F.3d at 681. Failure to follow prescribed treatment or seek treatment, without a

believable explanation has long been recognized as a reason that would allow an ALJ to have

doubt concerning the sincerity of a claimant's pain testimony. See Fair v. Bowen, 885 F.2d 597,

603-04 (9th Cir. 1999).

II.     The ALJ Provided Clear and Convincing Reasons to Not Fully Credit Plaintiff's
        Testimony.

        This is at root a credibility case involving hard to verify subjective complaints of pain

and other symptoms. To reject a claimant's subjective claims once the claimant establishes the

existence of impairment and a causal relationship between the impairment and some level of

symptoms, the ALJ must unless there is affirmative evidence of malingering, provide clear and

convincing reasons, supported by substantial evidence. See Burch, 400 F.3d at 680; Morgan v.

Apfel, 169 F.3d 595, 599 (9th Cir. 1999). In making a credibility finding the ALJ may consider,

---

[1] Plaintiff recognizes this fact earlier in his brief when he describes the "three types of step-five

decisions" and then admits that the ALJ in this case rendered a step-five decision. (Pl.'s Op. Br.

at 6-7).

Page 7

for example:  (1) ordinary techniques of credibility evaluation, such as the claimant's reputation

for lying, prior inconsistent statements concerning the symptoms, and other testimony by the

claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek

treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and

(4) medical evidence tending to discount the severity of subjective claims.  See Rollins, 261 F.3d

at 856-57; see also Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001); Fair, 885 F.2d

at 603.  An ALJ cannot be required to believe every allegation, or else disability benefits would

be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A); Fair, 885 F.2d

at 603-04.

        As set forth in the ALJ decision, Plaintiff has severe impairments, which can reasonably

cause the pain and symptoms about which Plaintiff complains.  Therefore, Plaintiff has satisfied

the first requirement of the test set forth in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).  The

question in the instant case, however, is not whether Plaintiff is experiencing pain or symptoms

due to his impairments but whether Plaintiff's subjective statements concerning the severity of

his pain are credible.

        With respect to credibility, the Ninth Circuit has stated:

>        An ALJ cannot be required to believe every allegation of disabling pain, or else
>        disability benefits would be available for the asking, a result plainly contrary to
>        42 U.S.C. § 423(d)(5)(A) . . . .  This holds true even where the claimant
>        introduces medical evidence showing that he has an ailment reasonably expected
>        to produce some pain; many medical conditions produce pain not severe enough
>        to preclude gainful employment.

Fair, 885 F.2d at 603 (emphasis in original).  The court has consistently held that "[t]he ALJ is

responsible for determining credibility, resolving conflicts in medical testimony, and for

resolving ambiguities."  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal

quotations omitted); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  "If the ALJ's credibility

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas, 278 F.3d at 959. Here, the ALJ found inconsistencies in Plaintiff's allegations of a disabling impairment and gave the following reasons to reject Plaintiff's testimony.

The ALJ noted Plaintiff's activities of daily living and lack of compliance with medical treatment to find his subjective allegations to be not fully credible (Tr. 22). An ALJ may discredit a claimant's subjective complaints by identifying inconsistencies between his complaints and activities of daily living. See Thomas, 278 F.3d at 958-59; Rollins, 261 F.3d at 857. Some activities that may contradict subjective complaints of pain and disability include cooking, shopping, and housekeeping. See id. Here, the ALJ noted that Plaintiff worked at his computer a couple of hours a day most days, which contradicted his testimony that he could not sit for any length of time (Tr. 22, 84). The ALJ also noted that in addition to Plaintiff's ability to work at the computer, his wife testified that he drove the family boat to go fishing and took daily short walks with increasing frequency (Tr. 22, 84, 318). The ability to operate a fishing boat stands in stark contrast to an individual alleging a level of pain that any activity will lay him up for a couple of days. Id. The ALJ properly cited these daily activities in discrediting Plaintiff's testimony. See id.

While the activities discussed above do not necessarily indicate Plaintiff's ability to perform a full range of work activities, they are inconsistent with his alleged level of impairment and would allow the ALJ to draw an adverse inference as to Plaintiff's credibility. See Tonapetyan, 242 F.3d at 1147-48; Morgan, 169 F.3d at 599-600. Plaintiff testified to a degree of incapacity incompatible with the activities detailed above. The ALJ properly found that the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

evidence contradicted Plaintiff's allegations concerning his subjective complaints. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

As noted above the ALJ found that Plaintiff's lack of interest in pursuing recommendations from his medical providers indicated that his impairments were not interfering with his functioning to the degree he alleged (Tr. 22). See Burch, 400 F.3d at 681; Fair 885 F.2d at 603-04. In his medical summary, the ALJ noted that following his work related injury in August 2000, Plaintiff was treated by Kendrick D. Blais, D.O. Dr. Blais recommended physical therapy and noted that within a month, Plaintiff had reported that much of the deep burning pain he had experienced had resolved (Tr. 17, 170). On December 19, 2000, Plaintiff returned to Dr. Blais following a slip and fall on ice that exacerbated his back condition (Tr. 22, 168). Following a relatively benign examination Dr. Blais released Plaintiff to light duty work up to eight hours per day, with no bending or lifting more than ten pounds and instructed Plaintiff to return in a month (Tr. 17, 168). Plaintiff never kept his January 2001, appointment, and on April 10, 2002, Dr. Blais informed the agency that Plaintiff never returned to her facility and had been noncompliant with physical therapy (Tr. 17, 166). Plaintiff's failure to seek treatment was an appropriate reason for the ALJ to not blindly accept his allegations of recalcitrant disabling pain. Burch, 400 F.3d 681; Fair, 885 F.2d 603-04.

The ALJ's decision followed a logical sequence and established that his reasons for rejecting Plaintiff's testimony were founded on his analysis of the medical evidence, and Plaintiff's testimony. The ALJ provided clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's allegations. See Rollins, 261 F.3d at 856-67. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those

1

findings are supported by substantial evidence in the record, [the Court's] role is not to second

2

guess that decision." Fair, 885 F.2d at 604.

3

Because the ALJ made specific findings to support his credibility determination, it is

4

entitled to "great weight." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986). The

5

elimination of any one reason does not mean that the ALJ's entire credibility assessment is

6

improper. See Batson, 359 F.3d at 1197. The ALJ properly determined, based upon the totality

7

of the record, that Plaintiff's subjective allegations were incredible. The ALJ's credibility

8

determination is supported by clear and convincing reasons, based on substantial evidence, and

9

free of legal error. Therefore, the ALJ's finding concerning Plaintiff's credibility should be

10

upheld. See Richardson, 402 U.S. at 401.

11

III.    The ALJ Properly Evaluated the Medical Evidence.

12

An ALJ is responsible for resolving conflicting or ambiguous medical evidence. See

13

Thomas, 278 F.3d at 956-57. An ALJ must give specific, legitimate reasons for rejecting

14

controverted medical opinions and may do so by summarizing the conflicting evidence in detail

15

and interpreting it. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is

16

solely responsible for resolving conflicts in the evidence. See Morgan, 169 F.3d at 601. This

17

Court may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes,

18

881 F.2d at 755. In this case the ALJ provided a detailed summary and analysis of the medical

19

evidence of record as it pertained to Plaintiff's medical impairments (Tr. 17-21).

20

The ALJ noted that medical evidence showed Plaintiff first complained of back pain on

21

August 18, 2004, following an accident at work (Tr. 17, 166). The ALJ noted that Plaintiff

22

started chiropractic therapy on his own and in October 2000, Dr. Blais recommended physical

23

therapy as well (Tr. 17, 171). Dr. Blais noted that within a month Plaintiff reported that his

1    deep, burning pain had resolved in neutral position, but that he still complained of pain with

2    twisting (Tr. 17, 170).

3         On December 19, 2000, Plaintiff returned to Dr. Blais and complained that he had

4    reinjured his back approximately one week before when he slipped on ice and fell. Dr. Blais

5    noted tenderness in Plaintiff's sacroiliac joints bilaterally and some tenderness of the paralumbar

6    and perithoracic muscles. Seated straight leg raising, however, was negative bilaterally, he could

7    toe-walk without difficulty, and his strength was five out of five in both extremities (Tr. 17,

8    168). Dr. Blais released Plaintiff to light duty up to eight hours per day, with no bending or

9    lifting more than ten pounds and instructed him to return in month. As noted above, Plaintiff did

10   not return to see Dr. Blais and on April 10, 2002, she stated that, in addition to not returning for

11   treatment, he had been noncompliant with physical therapy having last presented on November

12   24, 2000 (Tr. 17, 166).

13        The ALJ summarized the findings of Davis Peterson, M.D. who on April 20, 2001,

14   evaluated Plaintiff in connection with his workers' compensation claim (Tr. 17, 183).

15   Dr. Peterson diagnosed Plaintiff with a central disc herniation at T5-T6 and T6-T7, with slight

16   mass effect on the cord at C6-C7; right sided paramedian disc herniation at T8-T9; herniated

17   nucleus pulposus central to right sided L5-S1 with underlying degenerative changes; and

18   probable Scheuermann's kiphosis asymptomatic prior to his injury (Tr. 17, 189). Dr. Peterson

19   prescribed a back brace to immobilize the affected area and recommend continued walking

20   (Tr. 17, 189). He also prescribed Indocin for pain and Zanaflex to help with sleep (Tr. 17, 189).

21   Dr. Peterson opined that Plaintiff was not currently employable in his usual heavy labor job. He

22   opined, however, that Plaintiff might be able to return to that work after treatment, but

23

anticipated that more than likely Plaintiff would ultimately function at the medium level of exertion (Tr. 17-18, 189).

The ALJ also noted that on April 18, 2002, Dr. Peterson concluded that Plaintiff's continued low back pain was likely due to chemical radiculitis, recommended a repeat intradiscal electrothermal annulplasty (IDET), but ruled out surgery due to Plaintiff's young age and the lack of indication for discectomy (Tr. 19, 181). Dr. Peterson concluded that Plaintiff would need retraining into light or sedentary type work (Tr. 19, 181).

The ALJ also noted that Plaintiff was seen by pain specialist Grant Roderer, M.D. (Tr. 18, 135-57). On May 8, 2001, Dr. Roderer performed a consultative examination, during which Plaintiff complained that pain constantly interfered with his activities of daily living (Tr. 18, 146). Dr. Roderer noted that lumbar and thoracic magnetic resonance imaging (MRI) showed small disc herniation at the T8-T9 level and mild impression upon the thecal sac with no evidence of neural spinal stenosis, and disc height fairly well maintained (Tr. 18, 147, 159-65). Following a relatively benign physical examination Dr. Roderer diagnosed discogenic thoracic and lumbar pain secondary to disc protrusions (Tr. 18, 148). On May 24, 2001, a discography revealed discogenic low back pain secondary to internal disc disruption at multilevels (Tr. 18, 143). Dr. Roderer recommended an additional IDET and continued physical therapy with lumbar stabilization exercises (Tr. 18, 143).

On August 6, 2001, Plaintiff began IDET therapy and in September 2001, he received epidural steroid injections at L4-L5 (Tr. 18, 139, 210). By December 11, 2001, Plaintiff reported a "50% decrease in pain symptoms in the lower back and sacral area" (Tr. 18, 137). Dr. Roderer opined that Plaintiff was not yet medically stable, but was likely ready to pursue different vocational avenues for retraining (Tr. 18, 137).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

     The ALJ noted that in October 2004, Dr. Peterson stated that Plaintiff was limited in his ability to sit for prolonged periods of time and unable to do any repetitive twisting, bending, or carrying (Tr. 23, 229). However, Dr. Peterson opined that to better define Plaintiff's occupational options, he would probably require a fairly thorough physical capacities evaluation and vocational assessment as well (Tr. 23, 229). Dr. Peterson, also stated that at best Plaintiff would be able to pursue "only fairly light or sedentary activities part-time and possibly longer depending upon his response to treatment" (Tr. 23, 229). The ALJ rejected Dr. Peterson's assessment of functioning because it was based upon Plaintiff's own statements (Tr. 23). This was a proper reason for not accepting his opinion. A physician's opinion based primarily on the properly rejected subjective complaints of the Plaintiff is entitled to the same weight. See Tonapetyan, 242 F.3d at1149(citing Fair, 885 F.2d at 605). The ALJ also rejected Dr. Peterson's opinion because Plaintiff's daily activities, that included operating a fishing boat and working on his computer several hours a day, require the ability to sit for prolonged periods (Tr. 23). This is not speculation as Plaintiff suggests, but common sense evaluation of the activities involved.

     The ALJ also observed that in October 2004, Dr. Roderer opined that Plaintiff "may not be able to sustain any work level due to his severe chronic pain symptoms" (Tr. 23, 230). The ALJ noted that Dr. Roderer characterized Plaintiff's pain as "quite disabling" (Tr. 23, 23). The ALJ rejected Dr. Roderer's opinion for the same reasons he rejected Dr. Peterson's opinion (Tr. 23). In addition, the ALJ noted that at no other time during Dr. Roderer's treatment of Plaintiff did he indicate that Plaintiff would be disabled, but rather stated that he should be ready to look at vocational opportunities (Tr. 23, 137).

     There are two types of medical source opinions typically provided in disability cases: (a) "medical opinions" that speak to the nature and extent of a claimant's limitations, and

1

2   (b) opinions concerning "the ultimate issue of disability," i.e., opinions about whether a claimant

3   is capable of any work, given his limitations (disability opinions). See Holohan v. Massanari,

4   246 F.3d 1195, 1202 (9th.Cir. 2001).  A medical source's disability opinion cannot be given

5   controlling weight because such opinions are not medical opinions about specific functional

6   limitations, but administrative findings reserved to the Commissioner.  See SSR 96-5p, available

7   at 1996 WL 374183.  Thus, they cannot be given controlling weight or special significance even

8   though offered by a treating physician.  Furthermore, a physician's opinion of disability is not a

9   legal opinion establishing disability under the Social Security Act because that finding involves a

10  medical and vocational component.  See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000).

11  Accordingly, the ALJ properly rejected the opinions of Dr. Peterson and Dr. Roderer.

12          Contrary to Plaintiff's assertions, a physician's opinion is not automatically credited as a

13  matter of law if the ALJ's finding was insufficient (Pl.'s Op. Br. at 16).  Cf. Bunnell v. Barnhart,

14  336 F.3d 1112, 1115-16 (9th Cir. 2003); Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003)

15  (remanding for further administrative proceedings due to improperly rejected testimony and

16  medical evidence).  Rather, further proceedings are necessary when there are outstanding issues

17  to resolve.  See id.

18          The ALJ summarized conflicting evidence, interpreted it, and gave reasons for his

19  decision, as required (Tr. 17-21).  See Reddick, 157 F.3d at 722.  The ALJ's reasoning provides

20  sufficient guidance for this Court to draw inferences as to why the ALJ rejected the more

21  restrictive medical opinions.  Given conflicting evidence, the ALJ rationally found that Plaintiff

22  could perform a reduced range of light work (Tr. 25).  This Court should defer to the ALJ's

23  resolution of the conflicting evidence.  See Batson, 359 F.3d at 1193; Morgan, 169 F.3d at 601.

1    Assuming arguendo that the Court finds Plaintiff's interpretation of the medical evidence

2    rational, the Commissioner submits that the ALJ's interpretation is equally rational and

3    supported by substantial evidence. When the evidence is susceptible to more than one rational

4    interpretation, the Commissioner's conclusion must be upheld. See Batson, 359 F.3d at 1193;

5    Morgan, 169 F.3d at 599.

6    IV.    The ALJ's RFC Assessment was Proper.

7    Plaintiff's RFC is the most he can do considering his impairments and limitations. See

8    SSR 96-8p, available at 1996 WL 374184. This is not a medical issue; the ALJ has the

9    responsibility for determining Plaintiff's residual functional capacity. See 20 C.F.R. § 404.1546;

10    SSR 96-5p, available at 1996 WL 374183. Therefore, neither a doctor's opinion nor Plaintiff's

11    testimony is conclusive on this issue. Nevertheless, in assessing Plaintiff's residual functional

12    capacity, the ALJ must consider the whole record, and explain how he weighs the medical

13    evidence and testimony. The ALJ makes his final determination based on the evidence as a

14    whole. See SSR 96-5p. Here, the ALJ considered the entire record, including Plaintiff's

15    testimony (which he found not totally credible) and concluded he retained the RFC for work at a

16    reduced range of light level exertional capacity (Tr. 23, 25, Finding 6). This finding was

17    supported by the medical evidence and the credible portions of Plaintiff's testimony.

18    Plaintiff argues that the ALJ did not account for sustained work activities. (Pl.'s. Op. Br.

19    at 11-12). This argument was made in apparent disregard of the ALJ's summary of Dr. Blais's

20    opinion that Plaintiff would be able to sustain light work activity for no longer than eight hours a

21    day (Tr. 17, 166). Although, the ALJ did not specifically state, "I find Plaintiff can sustain work

22    activity because …," he was not required to do so. An ALJ need not recite certain "magic

23    words" in his decision, so long as the reviewing court can draw specific and legitimate

1  inferences from his findings. See Magallanes, 881 F.2d at 755; see also Batson, 359 F.3d
2  at 1193.
3
4  Plaintiff also argues that the ALJ did not appropriately account for the side effects of his
   medications in his RFC analysis. (Pl.'s Op. Br. at 21).  The ALJ, however, did note the side
5  effects of medication that he alleged during the hearing (Tr. 19).  He listed drowsiness, upset
6  stomach, and stomach cramps as the side effects of his medication (Tr. 19, 90, 93).  During
7  questioning from Plaintiff's attorney he stated that his current medications were stronger than his
8  previous medicines, but he did not indicate any further side effects from them (Tr. 315-16).
9  As discussed above, the ALJ properly discredited the more severe limitations Plaintiff
10 alleged and accounted for any credible limitations that were supported by the medical evidence
11 and credible testimony.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).
12 Plaintiff's credibility was undermined by his failure to explain why he did not pursue treatment
13 and his activities of daily living.  Accordingly, the ALJ's RFC finding was supported by
14 substantial evidence and free of legal error, and should be affirmed.  See Richardson, 402 U.S.
15 at 401.
16 V.    Evidence Submitted to the Appeals Council Does Not Support a Finding of Disability or
17       Provide a Reason for Further Proceedings.
18 Plaintiff submitted additional evidence to the Appeals Council after the ALJ's denial of
19 benefits, as evidence that compels reversal of the ALJ's decision because the ALJ was mistaken
20 about the lack of evidence of physical therapy (Pl.'s Op. Br. at 19).  This argument fails for at
21 least two reasons.  The first is that this evidence was not before the ALJ at the time he issued his
22 decision.  Although the Ninth Circuit has held that district courts should consider evidence
23 submitted to the Appeals Council in determining whether the Commissioner's final decision is
   supported by substantial evidence, Ramirez v. Shalala, 8 F.3d 1449, 1451-1452 (9th Cir. 1993),

the courts are without jurisdiction to consider an Appeals Council's denial of review. <u>See</u>

20 C.F.R. §§ 404.981, 422.210; <u>see also</u> <u>Mackey v. Shalala</u>, 47 F.3d 951, 953 (8th Cir. 1994)

(court has no jurisdiction to review Appeals Council's action on denial of review, because "it is a

nonfinal agency action"). The jurisdictional requirements of 42 U.S.C. § 405(g), provide that

only a "final decision of the Commissioner of Social Security" may be reviewed in the district

courts. <u>See</u> 42 U.S.C. § 405(g). Because the ALJ's decision becomes the final decision of the

Commissioner when the Appeals Council denies review, the Appeals Council's action on denial

of review is not subject to judicial review. <u>See</u> 20 C.F.R. §§ 404.981, 422.210; <u>Batson</u>, 359 F.3d

at 1193 fn. 1.

Because there is no jurisdiction to consider the Appeals Council's action on denial of

review, the Appeals Council's reasons, or lack thereof, after the ALJ's decision are likewise not

subject to appellate review. Therefore, the Ninth Circuit has held that the Appeals Council need

not provide particular evidentiary findings when it rejects evidence submitted subsequent to the

ALJ's decision without accepting review. <u>See</u> <u>Gomez v. Chater</u>, 74 F.3d 967, 972 (9th Cir.

1996). While the Court may consider these documents in determining whether the ALJ's

decision is supported by substantial evidence, the Court should not remand a case for payment

because the ALJ never had an opportunity to review this evidence. <u>See</u> <u>Harman</u>, 211 F.3d

at 1180 ("While we properly may consider the additional evidence presented to the Appeals

Council in determining whether the Commissioner's denial of benefits is supported by

substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no

opportunity to evaluate that Appellant is entitled to benefits as a matter of law"); 42 U.S.C.

§ 405(g) sentence six.

1

2          In order to be entitled to a remand on the basis of his new evidence presented to the

3    Appeals Council, Plaintiff must show there was a reasonable possibility of changing the outcome

4    of the ALJ's determination. See Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984). In the

5    instant case, the documents provide no new information that raises a reasonable possibility the

6    ALJ would change his decision. The documents that are not duplicate show that Plaintiff was

7    non-compliant and a no-show on many occasions and that when he did participate, he

8    experienced improvement in his condition (Tr. 247, 255, 262-63, 268-69, 278, 280, 283, 285,

9    287, 291). Because the remaining medical evidence is similar to this post hearing evidence, it

10   would most likely add nothing to the ALJ's analysis; does not create a reasonable possibility that

11   he would change his decision; and is not a reason to remand for further proceedings.

12         The second reason for not remanding this case on the basis of the post hearing evidence

13   is that in addition to the requirement that Plaintiff show that this evidence is new and material, he

14   must also show that he has good cause for his failure to incorporate the records that existed at the

15   time of the ALJ's decision. See generally Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir.

16   2001). Here, Plaintiff does not explain why he could not have solicited and submitted these

17   records prior to the ALJ hearing or the issuing of his decision. Thus, Plaintiff has not shown that

18   he meets the good cause requirement. See id. Accordingly, this evidence does not provide a

19   basis for this Court to remand for this case for further consideration let alone a finding of

20   disability.

21                                           CONCLUSION

22         The Commissioner carefully weighed the evidence and applied the correct legal

23   standards. Therefore, the Commissioner's decision should be affirmed. See Batson, 359 F.3d

     at 1193.

1    DATED this 7th day of December 2005.

2                                    Respectfully submitted,

3
                                     TIMOTHY R. BURGESS
4                                    United States Attorney

5                                    RICHARD POMEROY
                                     Assistant United States Attorney
6
                                     MICHAEL McGAUGHRAN
7                                    Regional Chief Counsel, Region X, Seattle

8

9                                    _____
                                     STEPHANIE R. MARTZ
10                                   Special Assistant United States Attorney

11
     OF COUNSEL:
12   RICHARD M. RODRIGUEZ
     Assistant Regional Counsel
13

14   Certificate of Service

15   I declare under penalty of perjury
     that a true and correct copy of
16   Defendant's Brief was sent to

17        Robert A. Friedman
          3410 Broadway
          Everett, WA 98201
18

19   Via U.S. Mail.

20   Executed at Seattle, Washington, on
     December 7, 2005.

21   _____

22   Christopher Dellert
     Paralegal Specialist
     Office of the General Counsel
23